# 99 DTA 167

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I-SAN JUAN
PANEL III**

VALERIANO RIVERA LEBRON
Apelante-Recurrente

v.

JUNTA DE SINDICOS DEL SISTEMA DE RETIRO DE LOS EMPLEADOS
DE LA AUTORIDAD DE ENERGIA ELECTRICA
Apelada-Recurrida

Núm. KLRA-98-00538

San Juan, Puerto Rico, a 14 de mayo de 1999

Panel integrado por su Presidenta, la Jueza Ramos Buonomo
y los Jueces González Román y Córdova Arone

Ramos Buonomo, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Sr. Valeriano Rivera Lebrón (Sr. Rivera) nos solicita la revisión de la resolución en reconsideración emitida el 31 de julio de 1998 por la Junta de Síndicos del Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica (Junta). Mediante tal dictamen la Junta se reafirmó en su determinación inicial de 22 abril de 1998 mediante la cual denegó la solicitud del Sr. Rivera a los efectos de que la póliza de seguros que proveía el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica (Sistema de Retiro) cubriera un préstamo hipotecario.

Por los fundamentos que pasamos a exponer se expide el auto de revisión solicitado y se confirma la resolución recurrida.

## I

A continuación procedemos a hacer un recuento de los hechos del caso según éstos surgen de los anejos sometidos por ambas partes.

El Sr. Rivera realizó un préstamo hipotecario con el Sistema de Retiro el 22 de julio de 1988. Para esa fecha, era el propio Sistema de Retiro quien cubría los préstamos en caso de muerte o incapacidad de los prestatarios.

No obstante, el Sistema de Retiro transfirió a la compañía aseguradora National Life Insurance Co. (National Life), a partir del 1 de septiembre de 1994, los riesgos relacionados a los casos de muerte e incapacidad en todos los préstamos activos en la cartera de dicho Sistema de Retiro. Además, la National Life también asumió los riesgos en caso de muerte e incapacidad para todos los préstamos nuevos que el Sistema de Retiro realizara a partir de la anterior fecha. Precisa señalar que en la transferencia realizada, la National Life estableció y dividió el riesgo en las siguientes dos pólizas de seguro: (1) la póliza A (CL-256-A) que cubría todos los préstamos otorgados antes del 1 de septiembre de 1994 y (2) la póliza B (CL-256-B) para cubrir todos los préstamos otorgados después del 31 de agosto de 1994. Por consiguiente, el préstamo realizado por el Sr. Rivera el 22 de julio de 1988 estaba cubierto por la póliza A.

Esta póliza grupal A establecía en el contrato sobre cubierta de la póliza que la fecha de incapacidad para deudores en servicio activo sería la fecha en que fuera efectiva la jubilación por incapacidad de estos deudores de la Autoridad de Energía Eléctrica (AEE). █

Así las cosas, el Sr. Rivera sufrió un accidente en su empleo el 3 de enero de 1995. A raíz del mismo, el Sr. Rivera fue evaluado en distintas ocasiones durante los años 1996 y 1997 por médicos consultores de la AEE para determinar su capacidad laboral.

Mientras tanto, la National Life canceló en su totalidad la póliza A del Sistema de Retiro efectivo el 30 de noviembre de 1996. █ Sin embargo, luego de negociaciones efectuadas entre el Sistema de Retiro y la National

Life, esta última mantuvo vigente la póliza A solamente para la cubierta de seguro de vida. En razón de ello, la National Life eliminó la cubierta de incapacidad para dicha póliza, efectivo el 1 de diciembre de 1996. Precisa aclarar que la póliza B que cubría los préstamos otorgados después del 31 de agosto de 1994 se mantendría por la National Life con la cubierta de vida e incapacidad.

Ante la cancelación de la cubierta por incapacidad en la póliza A, la Junta aprobó que el Sistema de Retiro asumiría temporeramente dicha cubierta para los préstamos bajo la referida póliza A desde el 1 de diciembre de 1996 hasta el 31 de enero de 1997. Estos préstamos quedarían sin cubierta de incapacidad efectivo el 1 de febrero de 1997. ■

A su vez, el Sr. Rivera realizó un préstamo personal con el Sistema de Retiro el 3 de marzo de 1997. [4] Por otro lado, la Junta, luego de recibir la recomendación de los médicos consultores de la AEE a tales efectos, aprobó la jubilación por incapacidad física relacionada al Sr. Rivera con fecha de efectividad del 22 de marzo de 1997. Tal determinación fue notificada al Sr. Rivera el 14 de abril de 1997.

En esa misma fecha, el Sistema de Retiro sometió la reclamación de cubierta para el préstamo personal del Sr. Rivera a la National Life. Por su parte, el Sr. Rivera solicitó a la Junta el 23 de abril de 1997 que la póliza de seguros que proveía el Sistema de Retiro en casos de incapacidad o muerte cubriera tanto el préstamo personal y el préstamo hipotecario que el Sr. Rivera debía a este Sistema.

Mientras tanto, efectivo el 1 de septiembre de 1997, la National Life canceló tanto la póliza A, que había continuado asegurando por vida los préstamos otorgados por el Sistema de Retiro hasta el 31 de agosto de 1994, como la póliza B que aseguraba por vida e incapacidad los préstamos que habían sido otorgados por dicho Sistema a partir del 1 de septiembre de 1994. El Sistema de Retiro notificó tal acción a todos sus miembros el 19 de junio de 1997.

Como primer paso para resolver la anterior situación, el Sistema de Retiro contrató con la compañía aseguradora General Life Assurance Co. of Puerto Rico para asegurar, por vida solamente, los préstamos hipotecarios efectivo el 1 de septiembre de 1997. El propio Sistema de Retiro asumió el riesgo sobre muerte e incapacidad temporeramente para los préstamos personales bajo las mismas condiciones y términos que establecía la póliza de la National Life. Esta determinación fue notificada a todos los miembros del Sistema de Retiro el 27 de agosto de 1997. En dicha comunicación se incluyó una referencia a la notificación fechada 19 de junio de 1997 en relación a la fecha (1 de septiembre de 1997) en que la National Life haría efectiva la cancelación en su totalidad de las pólizas A y B.

Posteriormente, la National Life denegó la cubierta y el pago de la reclamación sometida por el Sistema de Retiro correspondiente al préstamo personal del Sr. Rivera bajo la póliza B el 6 de octubre de 1997. [5] No obstante, el Sistema de Retiro asumió y pagó al Sr. Rivera la cubierta máxima de $10,000 que establecía la póliza para préstamos personales. Siendo el préstamo personal del Sr. Rivera por $19,521.85, al restarle los $10,000 que el Sistema de Retiro asumió, quedó un balance pendiente de pago por el préstamo de $9,521.85. Estos se le descontaron al Sr. Rivera del Beneficio por Muerte que éste tenía derecho a recibir.

De otra parte, en misiva de 22 de abril de 1998, el Sistema de Retiro informó al Sr. Rivera que la Junta denegó su solicitud para que la póliza de seguros que proveía dicho sistema en casos de incapacidad cubriera el préstamo hipotecario que él le debía habida cuenta de que la fecha de su jubilación, 22 de marzo de 1997, era posterior al 30 de noviembre de 1996, fecha en que la aseguradora National Life había cancelado la póliza que cubría la incapacidad física.

El Sr. Rivera solicitó a la Junta en su moción de reconsideración que ésta determinara que él estaba

incapacitado desde el 3 de enero de 1995 y que, por tanto, sus préstamos estaban cubiertos por el seguro que proveía el Sistema de Retiro para ese tipo de préstamo.

No obstante, la Junta mantuvo su posición original. En carta fechada 31 de julio de 1998 el Sistema de Retiro informó al Sr. Rivera que la Junta denegó su solicitud de reconsideración por razón de que la fecha correcta para su jubilación por incapacidad física total y permanente relacionada con su trabajo era el 22 de marzo de 1997, la cual era posterior a la fecha cuando la aseguradora canceló la póliza por incapacidad física el 30 de noviembre de 1996.

No conforme con la anterior determinación, el Sr. Rivera solicita ante este Tribunal la revisión de dicha denegatoria. Alega que la Junta erró al determinar que la fecha de cancelación de la póliza de seguro para el riesgo de incapacidad era el 30 de noviembre de 1996 y no el 1 de septiembre de 1997, según el Sistema de Retiro había informado a los empleados de la AEE en sus circulares de 19 de junio de 1997 y de 27 de agosto de 1997. Además, sostiene que la Junta erró al tomar la fecha de jubilación del Sr. Rivera, 22 de marzo de 1997, como la fecha para determinar si éste está cubierto por la referida póliza de seguro, en vez de la fecha en que ocurrió el accidente, 3 de enero de 1995.

## II

En el caso que nos ocupa, por lo bien expuesto, argumentado y fundamentado que está el escrito en Oposición a la Expedición de Auto de Revisión, sin pasar por alto la inclusión de todos los anejos pertinentes a la controversia de autos, presentado por la parte recurrida, Junta de Síndicos del Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica, hacemos formar parte de esta sentencia dicho escrito con sus respectivos anejos.

No obstante, sintetizamos aquí las determinaciones de la Junta que confirmamos mediante la presente sentencia. En primer lugar, el préstamo hipotecario del Sr. Rivera otorgado el 22 de julio de 1988 no estaba cubierto por la póliza A, ya que la fecha de jubilación por incapacidad de éste, 22 de marzo de 1997, es posterior a la fecha en que la cobertura para tal riesgo en la referida póliza fue cancelada por la National Life, 30 de noviembre de 1996. ■ A pesar de que el Sistema de Retiro asumió temporeramente dicho riesgo hasta el 31 de enero de 1997, dicha fecha es también anterior a la fecha de efectividad de la jubilación por incapacidad del Sr. Rivera.

Precisa señalar que las circulares del Sistema de Retiro fechadas 19 de junio de 1997 y 27 de agosto de 1997 informaban sobre la cancelación de la póliza A, efectivo el 1 de septiembre de 1997, para la cobertura por muerte solamente. Adviértase que, como previamente mencionado, la cobertura por incapacidad en dicha póliza había sido cancelada por la National Life desde el 30 de noviembre de 1996.

Por otro lado, en momento alguno la Junta denegó cobertura al Sr. Rivera para su préstamo personal con el Sistema de Retiro de 3 de marzo de 1997. Por el contrario, el Sistema de Retiro asumió y pagó la cobertura máxima de $10,000 que cubría la póliza B para este tipo de préstamos, a pesar de que la National Life había denegado dicha cobertura.

No obstante, al ser la cantidad total del préstamo personal realizado por el Sr. Rivera $19,521.85, la cantidad restante al restar los $10,000 de cobertura quedó pendiente de pago. Como previamente mencionado, esos $9,521.85 fueron descontados del Beneficio por Muerte que el Sr. Rivera tenía derecho a recibir.

En razón de todo lo anterior, los errores señalados no fueron cometidos. Resulta evidente que la determinación de la Junta en este caso denegando la cobertura por incapacidad al Sr. Rivera no fue arbitraria, ilegal o irrazonable. Por el contrario, está apoyada por la evidencia considerada por la Junta la cual fue sometida

ante este Tribunal. Por consiguiente, no intervendremos con tal determinación. Adviértase que las determinaciones de las agencias administrativas merecen gran deferencia y respeto por parte de los tribunales. Un tribunal no intervendrá con las determinaciones administrativas salvo que se demuestre arbitrariedad, ilegalidad o irrazonabilidad de parte del foro administrativo o cuando las mismas no estén sostenidas por la prueba lo cual no ha ocurrido en el caso que nos ocupa. *Misión Ind. P.R. v. J.C.A.,* 145 D.P.R. ___ (1998), **98 J. T.S. 77**; *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 D.P.R. ___ (1997), **97 J.T.S. 34.**

Por los fundamentos antes expuestos, se expide el auto de revisión solicitado y se confirman las resoluciones emitidas el 22 de abril de 1998 y el 31 de julio de 1998 por la Junta de Síndicos del Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica.

Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 167

**1.** La página 11 de la póliza CL-256-A bajo el acápite identificado como *"Disability Date"* establece lo siguiente:

*"In the case of Debtors in active service, for purposes of establishing the liability of the Company with respect to the disability benefits provided under this Policy, the date of disability shall be the effective date of the retirement on account of disability. The Company shall be liable for disability benefits, as herein provided, with respect to such Debtor whose disability is certified by the Policyholder physician on or after the effective date of this Policy, but not beyond the termination date of Debtor's insurance."*

**2.** El Sistema de Retiro notificó la cancelación de la referida póliza A a todos sus miembros activos el 12 de noviembre de 1996.

**3.** El Sistema de Retiro notificó tal determinación a todos sus miembros activos el 16 de diciembre de 1996.

**4.** Nótese que este préstamo personal estaba cubierto por la National Life bajo la póliza grupal B.

**5.** La National Life denegó los beneficios de incapacidad al Sr. Rivera por razón de que éste no llenó la solicitud de seguro requerida por dicha compañía aseguradora y porque a la fecha del préstamo personal, 3 de marzo de 1997, el Sr. Rivera no estaba apto y disponible para trabajar por encontrarse en descanso ante el Fondo del Seguro del Estado desde el mes de enero de 1995.

**6.** Como previamente expuesto, la póliza determinaba que la fecha de incapacidad para deudores en servicio activo sería la fecha en que fuera efectiva la jubilación por incapacidad de estos deudores de la AEE.